GUTRIDE SAFIER LLP
SETH A. SAFIER (California Bar No. 197427)
*motion for pro hac vice admission sumbitted*
ADAM J. GUTRIDE (California Bar No. 181446)
MARIE A. MCCRARY (California Bar No. 262670)
ASHLEY SALISBURY, of counsel (New York Bar No. 3032745)
*motions for pro hac vice admission forthcoming*
835 Douglass Street
San Francisco, California 94114
Telephone: (415) 336-6545
Facsimile: (415) 449-6469

**14 CIV. 7527**

JUDGE BRICCETTI

Attorneys for Plaintiff, SAVORY PIE GUY, LLC
f/n/a CHOCRA CHOCOLATE LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAVORY PIE GUY, LLC f/n/a CHOCRA CHOCOLATE LLC, on behalf of itself and all others similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>COMTEC INDUSTRIES, LTD.,<br><br>          Defendant. | Civil Action No.<br><br>**Class Action Complaint**<br><br>Plaintiff demands a trial by jury. |

Plaintiff SAVORY PIE GUY, LLC f/n/a CHOCRA CHOCOLATE LLC, by way of Complaint against Comtec Industries, Ltd., states:

<h2 style="text-align:center">STATEMENT OF THE CASE</h2>

1.     This is a civil antitrust action brought by Plaintiff on behalf of itself and a class of purchasers against Defendant, seeking treble damages and other relief because Defendant unlawfully excluded, impeded and/or restrained competition for dough forming equipment, parts, and services that it manufacturers and sells.

2.     As alleged below, Defendant devised an implemented a scheme involving various acts, including in particular and without limitation, improperly refusing to deal with its customers who purchased dough forming equipment, parts, and/or services from Defendant's competitors, for the anticompetitive purpose of impeding rivals so that Defendant could sell its products at supracompetitive prices.

3.     For the last forty-six years, Defendant has manufactured and sold dough forming equipment for making pie crusts and tart shells (also referred to as "pressing machines"). Defendant is the largest player in this and supplies at least 90% of the dough forming equipment in the entry-level market in the United States.

4.     In order to secure and maintain Defendant's monopoly power, Defendant implemented and enforced a policy and practice of prohibiting its customers from purchasing dough forming equipment, parts, or services from any of Defendant's competitors. If Defendant learned that its customers purchased dough forming equipment, parts, or services from its competitors, Defendant anti-economically banned the customer from ever purchasing dough forming equipment, parts, or services from Defendant. Defendant refuses to deal with

2

customers who conduct business with Defendant's competitors even if the customer is not actually using any parts obtained from competitors.

5.     Defendant's anti-competitive conduct has: (1) fixed, raised, maintained, and/or stabilized the price of dough forming equipment and parts at supra-competitive levels; (2) overcharged Plaintiff and other direct purchasers of dough forming equipment and parts by depriving them of the benefits of competition; and (3) lowered the supply of products and services than there would have been in a competitive market.

## PARTIES

6.     Plaintiff Savory Pie Guy, LLC f/n/a Chocra Chocolate LLC ("Plaintiff") is a New York limited liability company with its principal place of business at 389 E3rd St, Mount Vernon, New York 10553.

7.     Defendant Comtec Industries, Ltd. ("Comtec") is an Illinois corporation with its principal place of business at 10210 Werch Dr., Suite 204, Woodridge, IL 60517.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, because this civil action arises under the laws of the United States, namely, the Sherman Anti-Trust Act, 15 U.S.C. §2, *et seq.*

9.     This Court has general jurisdiction over Defendant has purposefully availed itself of the privilege of doing business in New York and it has continuous and systematic general business contacts with the state of New York.  In particular, Defendant sells and ships dough forming equipment and parts to customers located in New York.  Additionally, Defendant provides services and repairs for its products sold to customers located in New York.

3

10.   This Court has specific jurisdiction over Defendant because its activities in the state of New York give rise to Plaintiff's claims against it. In particular, Defendant sold and shipped products to Plaintiff in New York. Subsequently, when Defendant learned that Plaintiff had purchased parts from Defendant's competitor, Defendant refused to sell or ship any more products to Plaintiff in New York.

11.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

12.   Defendant made use of the means and instrumentalities of transportation or communication in, or the instrumentalities of, interstate commerce, or of the mails in connection with the unlawful acts and practices and courses of business alleged in this Complaint.

## FACTS

### A.  Background

13.   Defendant was founded 46 years ago and is still owned by the family that started the company. Defendant advertises, markets, and sells dough-forming equipment for making pie crusts and tart shells (also referred to as "pressing machines").

14.   Pressing machines press raw dough into baking tins using aluminum or steels dies. Pressing machines are used by first placing a baking tin in the lower die (called a nest). Then the user places a ball of raw dough in the baking tin. Finally, the user pushes a lever, which raises the nest into the upper die (called a punch) to press the dough into a crust or shell.

15.   There are an infinite number of sizes and shapes of crusts and shells that can be created with the presses.  For example, depending on the type of dies used, pressing machines can form dough into scalloped, round, rectangular, square, heart-shaped, and boat-shaped baking tins made of paper, plastic, silicone, foil, and/or steel.  Additionally, stamper dies are used to form pie crust tops from a ball of dough and crimper dies can be used to crimp the edges of the pie crust.  Dies are typically custom-made to the user's specifications by a machinist skilled in making dies.  A full set of dies for use in a pressing machine typically cost between $800.00 to over $10,000.00 depending on the user's specifications.

16.   Defendant currently manufacturers and sells three different models of single unit pressing machines: (i) the Comtec 1100, which is a single tier machine which forms pies on one tier; (ii) the Comtec 2200, which is a double tier machine which forms pies on both tiers, or pies on one tier and tops on the other; (iii) the Comtec 2900, which is an automatic dough forming machine.  Further, Defendant sells parts (include dies) for pressing machines and services pressing machines.

**B.   The Relevant Market and Defendant's Monopoly Power.**

17.   The Relevant Market is the market for single unit dough forming equipment, service, and parts for entry-level pastry production (i.e., equipment that can output approximately 250 pie crusts and/or tart shells per hour). Consumers in the Relevant Market include small to mid-sized bakeries, restaurants, hotels, banquet halls, cruise ships, cafeterias, and other food service providers in need of semi-automated processes for making pie crusts and tart shells.  The relevant geographical market is the United States.

18.   Defendant has a predominate share of the Relevant Market.  The Relevant Market is highly concentrated, with Defendant accounting for

5

approximately 90% of the market.  Defendant acknowledges that it is the largest
seller in the Relevant Market and claims that over one million pastries are made
each year using its dough forming equipment.  Defendant's only competitor in the
Relevant Market for dough forming equipment is Angel Equipment & Supply,
Inc.  However, Angel concentrates on manufacturing and selling pressing
machines that are highly automated and output over 250 pie crusts and/or tart
shells per hour. Defendant's competitors in the Relevant Market for dough
forming equipment service and parts include machinists that make dies for dough
forming equipment.  Formerly one such machinist was Jim Sutton d/b/a InLine
Pie. During the Class Period, Defendant dominated the Relevant Market and
exercised market power in the pricing of sales and service of pressing machines
and parts, including but not limited to, dies.

    19.   Defendant attempted to monopolize and did monopolize the Relevant
Market by, *inter alia*, refusing to deal with customers that purchased dough
forming equipment, parts or service from Defendant's competitors and exercising
price control over service and parts for pressing machines.  Defendant's actions
lack any business rationale consistent with efficiency sufficient to motivate such a
policy.

    20.   Through Defendant's unilateral refusal to deal with customers who
purchase service or parts from Defendant's competitors uneconomically and
restrictively exclude competitors from entering the market.  Defendant's ability to
exercise price control during the Class Period and ability to coerce customers to
refrain from purchasing service or parts from Defendant's competitors reflects
Defendant's monopoly power.

## C.  Defendant's Anti-Competitive Conduct

21.   During the Class Period, Defendant engaged in conduct intended to suppress and eliminate competition in the sale and service of pressing machines and parts by fixing the price of pressing machines and parts and refusing to deal with customers that purchase equipment, parts and/or services from Defendant's competitors.  In particular, Defendant prohibits its customers from purchasing parts or services from anyone other than Defendant.  Additionally, Defendant has a policy of refusing to sell parts and/or services for Defendant's pressing machines to new or existing customers if Defendant learns that its customers have purchased dough forming equipment, parts and/or services from one of Defendant's competitors.

22.   There is no objective or pro-competitive justification for this conduct. Defendant engages in the described unlawful policies and conduct for the purpose of restricting competition in the Relevant Market, obtaining and maintaining its monopoly market share in the Relevant Market, and controlling prices in the Relevant Market.  This scheme has prevented other companies from effectively competing in the Relevant and has allowed Defendant to maintain the artificially high supracompetitive prices they charge for dough forming equipment, parts, and services.

23.   Defendant's unlawful anti-competitive conduct alleged herein is international in nature and scope.

## D.  Injury to Plaintiff and Members of the Class

24.   Plaintiff is an entry-level pastry business that makes and sells savory pies to food establishments, including bars, groceries stores, and direct order.  In

order to increase its output of pies, Plaintiff purchased a used Comtec 2200 pie press in early 2011.

25. In the spring of 2012, Plaintiff contacted Defendant to request a customized die set for its pressing machine. Defendant made and sold Plaintiff a set of three dies – a nest, punch and crimper – and shipped those dies to Plaintiff in New York.

26. In the summer of 2012, Plaintiff contacted Defendant to request another customized die set for its pressing machine. Defendant made and sold Plaintiff a set of two dies – a nest and stamper – and shipped those dies to Plaintiff in New York.

27. Again, in the fall of 2012, Plaintiff contacted Defendant to request additional customized die sets for its pressing machine. Plaintiff made multiple phone calls to Defendant to request a die set that made twelve mini pies per press and a set that made four regular sized pies per press. Defendant did not return Plaintiff's calls and Plaintiff decided to look elsewhere to purchase the additional die sets.

28. Accordingly, in early September 2012, Plaintiff contacted one of Defendant's competitors, Jim Sutton d/b/a Inline Pie, a machinist in Kansas, and asked him to make the desired die sets. Plaintiff provided Mr. Sutton with its specifications. Mr. Sutton made the requested mini pie die set but he did not complete the die set for pressing four regular sized pies per press. Ultimately, Plaintiff decided to focus on its existing business creating regular sized pies and never used the mini pie die set made by Mr. Sutton in production with Plaintiff's Comtec 2200 pressing machine.

29. In early October 2013, Plaintiff's owner, Sean Mandel, attended the International Baking Industry Exposition ("IBIE") in Las Vegas, Nevada.

Defendant had a booth at the IBIE and was displaying its new semi-automatic pressing machine, the Comtec 2900. Mr. Mandel discussed the Comtec 2900 with Jim Reilly, Defendant's president, at the IBIE. Mr. Mandel asked Mr. Reilly if he could use the die sets that Plaintiff purchased from Defendant in 2012 with the Comtec 2900 pressing machine. Mr. Reilly informed him that those dies should work with some modifications. Mr. Mandel also told Mr. Reilly that he had a die set made by a third-party and asked if those would also work with the Comtec 2900. Mr. Reilly responded that it should not be a problem.

30.   Shortly thereafter, on or about October 21, 2014, Mr. Mandel contacted Defendant to request a written quote for the Comtec 2900 pressing machine so that he could provide it to his bank. Joseph Reilly, Comtec's vice-president, responded that he was busy but he would send the requested quote shortly.

31.   When Plaintiff did not receive the requested quote, Mr. Mandel again contacted Defendant via telephone. Defendant did not return Plaintiff's telephone call, but instead, sent Plaintiff the following letter via email on November 13, 2013:

32.

> Comtec Industries has learned that you are using Comtec Pie and Tart presses with parts and forming dies that were not manufactured by Comtec Industries.
>
> Comtec Industries considers these machines unsafe because of these parts. We cannot prevent anyone from using such a machine, but we can withhold our implied approval by not providing parts or service to Sean Mandel, Chocra Chocolates; and any other businesses that you may own from this point forward. Consequently, we will not manufacture any forming dies for or supply any future parts, equipment or service to you or your businesses.

9

Because these machines and any future machines used by your
business are considered by Comtec Industries to be unsafe, we
will continue to deny provide parts or service to you and to all
future owners of these machines.

33.   Although Plaintiff informed Defendant at the IBIE and again in email
correspondence that its was not using any third party dies in its pressing machine
and that it wanted to continue to purchase equipment from Defendant, Defendant
refused to do any more business with Plaintiff.

34.   Defendant's assertion that Plaintiff's pressing machine is now "unsafe"
because it had been used with dies that were not created by Defendant is wholly
meritless.  Defendant's pressing machines can be used safely with dies
manufactured by third party skilled machinists. It is a common practice in other
industries that utilize machines for machinists to produce parts and service
machines that the machinist did not create. Further, Defendant's pressing
machines are made of milled steel which is much stronger than the materials
commonly used to make dies (such as aluminum).  Accordingly, if anything were
to happen as a result of a defective die, the pressing machine would damage the
die but the dies are too weak comparatively to damage the machine. Last, it is a
simple process to remove and add dies and the use of a particular die or die set
does not permanently alter the machine itself.  Even if there could be any support
for Defendant's claim that using the pressing machine with a third party die is
unsafe (which there is not), the pressing machine could be easily rendered safe
again by replacing the die set with another.  Defendant's reliance on safety is
merely an attempt to justify its anti-competitive behavior.

35.   Further, Defendant's refusal to provide any "parts, equipment or
service" to Plaintiff extends far beyond even its own asserted safety justification.
Because Plaintiff purchased dies from Defendant's competitor, Defendant will not

do business with Plaintiff in any form in the future (even to sell Plaintiff a new pressing machine) regardless of whether Plaintiff continues to use dies manufactured by Defendant's competitors. Moreover, Defendant's refusal to deal with Plaintiff (or any subsequent purchasers of Plaintiff's pressing machine) reduced the value of Plaintiff's pressing machine to zero because it cannot buy customized dies from Defendant, use Defendant to service or repair the machine, or even sell without Defendant's ban applying to any and all subsequent purchasers.

36.   On March 27, 2014, Defendant filed a lawsuit against Jim Sutton d/b/a Inline Pie in the Northern District of Illinois alleging that he engaged in misconduct by: (i) copying its manual and (ii) selling aftermarket dies for Defendant's pressing machines.  Defendant used the lawsuit to coerce Mr. Sutton into entering into a Consent Judgment which restrained him from engaging in the allege misconduct and required him to perform specific actions.  In particular, the Consent Judgment retrains Mr. Sutton from the engaging in any of the following actions:

> iv. selling, trading, distributing or otherwise dealing in Comtec equipment, supplies, or parts;
>
> v. using any photographs or other images of dies and parts that Defendant made for Comtec machines in any advertising, social media or other promotion;
>
> vi. facilitating or directly or indirectly buying, trading, consulting, referring, manufacturing, or dealing in Comtec equipment or those parts that can be placed on or into and used with Comtec equipment without any modifications or additions whatsoever;

pressing machines.  Further, Defendant can use the copies of all the letters sent to Mr. Sutton's customers to create a master ban list of all the companies and individuals with which it will refusal to deal based on their business with Defendant's former competitor Mr. Sutton.

39.   During the Class Period, Plaintiff and the other members of the Classes were deprived of a lawfully operating market.  In particular, because of Defendant's anti-competitive conduct, Plaintiff and the other members of the Class paid prices that were not what they would have paid in the absence of the extensive unlawful conduct. As a result, Plaintiff and all members of the Class have suffered a legally cognizable injury due to Defendant's violations.

**E.   Class Allegations**

40.   In addition to Plaintiff's individual claims, Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class consisting of the following:

> All persons, natural or otherwise, who, between September 15, 2010 and the present, purchased dough forming equipment from Defendant.

41.   Excluded from the Class are Comtec, its affiliates, successors and assigns, officers and directors, and members of their immediate families.

42.   The proposed Class is so numerous that joinder of all members is impracticable. Plaintiff does not yet know the precise number of members in the Class, but estimates that it is well in excess of 1,000 people.

43.   There are questions of law and fact that are common to the Class, including, but not limited to, the following:

- whether Defendant's unlawful actions violate Section 2 of the Sherman Act;

13

- whether the market for dough forming equipment and parts for entry-level pastry production in the United States is an appropriate relevant market for the Monopolization Count;

- whether Defendant possessed monopoly power in the Relevant Market;

- whether through the conduct alleged herein, Defendant willfully acquired, maintained, and enhanced its monopoly power in the Relevant Market; and

- the operative time period and extent of Defendant's foregoing violations.

44.   Plaintiff's claims against Defendant are typical of the claims of the Class because Plaintiff and all other members of the class purchased dough forming equipment from Defendant. With respect to the class allegations, Plaintiff was subject to the exact same business practices and anti-competitive conduct.

45.   Plaintiff will fairly and adequately protect the interests of the Class.

46.   Plaintiff has demonstrated its commitment to the case, has diligently educated himself as to the issues involved, and to the best of its knowledge does not have any interests adverse to the proposed class.

47.   The questions of law and fact common to the members of the class predominate over any questions affecting only individual members.

48.   A class action is superior to other available methods for a fair and efficient adjudication of this controversy as many members of the proposed class have damages arising from Defendant's wrongful course of conduct which would not be susceptible to individualized litigation of this kind, including, but not limited to, the costs of experts and resources that may be required to examine the business practices in question.

49.   Given the relative size of damages sustained by the individual members of the Class, the diffuse impact of the damages, and homogeneity of the issues,

the interests of members of the Class individually controlling the prosecution of separate actions is minimal.

50. There is no litigation already commenced, nor is there anticipated to be subsequent litigation commenced by other members of the Class concerning Comtec's alleged conduct. Consequently, concerns with respect to the maintenance of a class action regarding the extent and nature of any litigation already commenced by members of the Class are non-existent.

51. Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this Class Action Complaint that would preclude its maintenance as a class action.

## COUNT ONE

**(Monopolization In Violation Of Section 2 of the Sherman Antitrust Act**
**15 U.S.C. §2, *et seq.*)**

52. Plaintiff incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

53. Defendant possesses monopoly power over the price of dough forming equipment, parts, and services and over the Relevant Market in the United States. But for Defendant's exclusionary and anti-competitive scheme, as alleged herein, Defendant would not have been able to maintain its monopoly power over the price of dough forming equipment, parts, and services, and over the Relevant Market.

54. During the Class Period, Defendant willfully and unlawfully maintained its monopoly power by excluding and impeding competition from the Relevant Market as alleged herein. The goal, purpose and/or effect of Defendant's scheme was to prevent, delay, and/or minimize the success of the Defendant's competitors

15

in the Relevant Market who would have sold dough forming equipment, parts, and services in the United States at prices significantly below Defendant's prices and therefore would have decreased Defendant's market share. Prices in the Relevant Market have been higher than they would have been in a competitive market; the supply of products and services in the Relevant Market has been lower than it would have been in a competitive market; and the number and effectiveness of competitors has been diminished by unlawful means.

55. Defendant's acts were undertaken in bad faith, for the purpose and with the effect of maintaining Defendant's monopoly in the Relevant Market. There is no appropriate or legitimate business justification for Defendant's actions and conduct, which have facilitated Defendant's monopolization of the Relevant Market.

56. Plaintiff and the Class Members have been injured in their business and property by reason of Defendant's anti-competitive activities. Plaintiff and the Class's injury consists of incurring substantial overcharges, by being caused to pay higher prices for dough forming equipment, parts, and services than they would have in the absence of Defendant's anti-competitive conduct. Plaintiff and the Class's injury is of the type the antitrust laws were designed to prevent and flows from that which makes Defendant's conduct unlawful.

## COUNT TWO

### (Attempted Monopolization In Violation of Section 2 of the Sherman Antitrust Act 15 U.S.C. §2, *et seq.*)

57. Plaintiff incorporates by reference all preceding paragraphs of this complaint as if fully set forth herein.

16

58. Defendant have engaged in an exclusionary and anti-competitive scheme, as alleged herein, with the specific intent to monopolize the Relevant Market. There was and is a dangerous possibility that Defendant will succeed in its attempt to monopolize the Relevant Market because the Defendant controls a large percentage of the Relevant Market, and further success by Defendant in excluding competitors from the Relevant Market will confer a monopoly on Defendant in violation of Section 2 of the Sherman Act (15 U.S.C. §2).

59. Defendant's attempted monopolization of the Relevant Market has harmed competition in the Relevant Market, and has caused injury to the buyers and sellers in the Relevant Market. Prices in the Relevant Market have been higher than they would have been in a competitive market; the supply of products and services in the Relevant Market has been lower than it would have been in a competitive market; and the number and effectiveness of competitors has been diminished by unlawful means.

60. There is no appropriate or legitimate business justification for Defendant's actions and conduct, which have facilitated Defendant's attempted monopolization of the Relevant Market.

61. Plaintiff and the Class Members have been injured in their business and property by reason of Defendant's anti-competitive activities. Plaintiff and the Class's injury consists of incurring substantial overcharges, by being caused to pay higher prices for dough forming equipment, parts, and services than they would have in the absence of Defendant's anti-competitive conduct. Plaintiff and the Class's injury is of the type the antitrust laws were designed to prevent and flows from that which makes Defendant's conduct unlawful.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury as to all issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all other similarly situated, respectfully request:

A.    That the Court certify a class pursuant to Federal Rule of Civil procedure 23(b);

B.    That the unlawful activities alleged herein be adjudicated and decreed a violation of § 2 of the Sherman Act, 15 U.S.C. § 2;

C.    That Plaintiff and the Class recover damages against Defendant, in an amount to be trebled in accordance with the antitrust laws pursuant to 15 U.S.C. §15;

D.    That Plaintiff and the Class be awarded their expenses and costs of suit including reasonable attorneys' fees to the extent provided by law;

E.    That Plaintiff and the Class be awarded pre-judgment and post-judgment interest at the highest legal rate from and after the date of service of this Complaint to the extent provided by law;

F.    That this Court permanently enjoin all continuing and future unlawful activity by Defendant in violation of the antitrust laws; and

G.    That Plaintiff and the Class be awarded such additional relief as the Court may deem proper.

Dated:  September 12, 2014                    **GUTRIDE SAFIER LLP**


Adam J. Gutride, Esq.
Seth A. Safier, Esq.
Kristen G. Simplicio, Esq.
835 Douglass Street
San Francisco, California 94114

Attorneys for Plaintiff